CUDAHY, Circuit Judge,
concurring in part and, perhaps, dissenting in part:
This case is about suppression of potential competition by a monopolist — the very essence of anti-competitive conduct. See United States v. El Paso Natural Gas, 376 U.S. 651, 660-62, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964). I agree with the conclusion of the majority that the allegations here pass both applicable tests of standing. It is not clear to me, however, for what purpose— beyond trial — the matter must be remanded to the district court. In the words of the majority, remand is being ordered to determine “whether the challenged acquisition had the effect of substantially lessening competition in the relevant market” (Majority Op. at 967 n.4), and to determine “whether the challenged transaction violated the antitrust laws” (id. at 965). If this is a remand merely to determine whether the facts conform to the allegations, I have no quarrel with it. However, if there is a suggestion that the allegations might be defective or incomplete, I respectfully disagree.
It has been alleged that by moving to protect its 85 percent market share and hence its effective monopoly, Nucor substantially lessened competition in the relevant market (purportedly the market for hot-rolled coil in the Southeast) and has preserved its power to set prices and control output in that commodity. See United States v. Grinnell Corp., 384 U.S. 563, 571, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). It is evident on appeal that these allegations, if proven, will show a violation of the antitrust laws. Whatever may have happened in the auction market for steel-making assets is irrelevant (as the majority seems to agree) and cannot alter the nature of the alleged antitrust violation. I would emphasize that efforts to retain a monopoly by definition harm competition and there is no further need in those circumstances to explore the state of competition. See id. at 576, 86 S.Ct. 1698 (recognizing that a firm with monopoly power that acquired potential competitors “perfected the monopoly power to exclude competitors and fix prices”). Consequently, the matter may now proceed to trial.
*970 Although the argument is not relied on by the majority opinion, a major element of Nucor’s litigation strategy was the contention that its conduct was excused by its “legitimate business purpose” to make money by trading in steel-making assets. But the concept of a legitimate business purpose as a defense to an allegation of anti-competitive conduct is simply an application of the principle of the rule of reason, which holds that the alleged anti-competitive consequences of a challenged practice may be weighed against its ostensible benefits to competition and to consumers in the larger scheme of things. 7 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 1500 (2d ed. 2003 & Supp.2006). The purpose of this principle is to facilitate and broaden analysis of the impact certain restraints may have on competition in the relevant market and on consumers, not on the monopolist. Id. ¶ 1504 (“[T]he rule of reason is not hospitable to every claim within the realm of reason, but only to matters bearing at the competitive significance of a restraint.”). Invoking it here is of no help to Nucor, since the claimed benefits (making money) accrue only to the monopolist, not to consumers. Nucor’s purportedly legitimate business reason for entering the auction concerns a separate and unrelated deal in assets, which is of no significance in evaluating the character of its conduct in blocking competition. Thus, Nucor has acted to prevent a potential competitor from entering the market in which it enjoys a monopoly, ostensibly to make money in a wholly different market. There is no claim that this alternative activity alters the effect that the primary exercise of monopoly power has on competition or consumers. There is nothing analogous here to the rule of reason, and the purported business purpose is not encompassed by that principle.
The monopolist here has succeeded in converting this rather elementary antitrust case into an argument about the propriety of a bankruptcy auction. But it matters not at all whether the Group bid at all or how much it bid at the auction. By entering the auction and seeking to buy the assets, Nucor and its co-conspirators allegedly took an action having the effect of excluding the Group from the market and maintaining Nucor’s monopoly, which injured the Group and is the source of its damages. See, e.g., Brunswick Corp. v. Riegel Textile Corp., 752 F.2d 261, 271 (7th Cir.1984) (“Exclusion from a market is a conventional form of antitrust injury that gives rise to a claim for damages as soon as the exclusion occurs .... ”).
I concur in the determination that the Group has standing but respectfully dissent from any suggestion that the district court do more than put the allegations to the proof.